UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
EBIRANNA EVANS,                                                   :
                                                                  :
                                  Plaintiff,                       :
                                                                  :            24-cv-7507 (LJL)
              -v-                                                 :
                                                                  :          OPINION AND ORDER
BRONXWORKS, INC.,                                                :
                                                                  :
                                  Defendant.                      :
                                                                  :
------------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: _12/03/2025__

LEWIS J. LIMAN, United States District Judge:

Pro se Plaintiff Ebiranna Evans ("Plaintiff" or "Evans") brings suit against Bronxworks, Inc. ("Defendant" or "Bronxworks") for breach of contract, retaliation, discrimination, and violations of 34 U.S.C. § 12474(d)(1)(A)–(C), 34 U.S.C. § 12475(c)(2)(A)–(C), 34 U.S.C. § 12494, and 34 U.S.C. § 12491(b)(1), (d)(2)(C), and (f). Dkt. No. 1 ¶ 20. Defendant Bronxworks, Inc. ("Defendant" or "Bronxworks") moves, pursuant to Federal Rule of Civil Procedure 12(c), for an order granting it judgment on the pleadings and dismissing Plaintiff's complaint. Dkt. No. 23.

For the following reasons, the motion for judgment on the pleadings is granted.

## BACKGROUND

The Court assumes the truth of the allegations of the complaint and construes them liberally to state the strongest argument they suggest.

Evans is a resident of Yonkers, New York. Dkt. No. 1 ¶ 1 (the "Complaint" or "Compl."). Bronxworks is the agent of Homebase, a New York city program that provides homelessness prevention services through partnerships with various community organizations in the five boroughs. Dkt. No. 32 ¶ 3 (the "Opposition," or "Opp."). In June of 2023, Evans sought

assistance from Bronxworks for an emergency transfer to a new apartment due to domestic violence. Compl. ¶ 3. Homebase required Evans to seek assistance from the Bronxworks location at 630 Jackson Ave., Bronx, NY 10455 (hereinafter "Jackson Office"). Compl. ¶ 2; Opp. ¶ 2. As an agent of the City of New York, Bronxworks was required to have policies and procedures that adhere to the Violence Against Women Act ("VAWA"). *Id.* ¶ 23.

When Evans approached the Jackson Office in June 2023 and attempted to open a case for an emergency housing transfer, she was told by a Bronxworks staff member that she would have to return another day, as the Jackson Office had already reached their "10 person quota" for the day. *Id.* On its website, however, Bronxworks states that "[e]mergency appointments are immediate or the next business day." Opp. ¶ 25; Exhibit B. Evans responded that she had a domestic violence emergency, to which the caseworker said, "Everyone here has an emergency. I suggest you come back tomorrow before [8:00 AM] so you can be seen." Compl. ¶ 4. Evans subsequently tried to open a case at another Bronxworks location, where she initially succeeded with getting assistance; however, once that office saw her zip code, they redirected Evans to the Jackson Office. *Id.* ¶ 5.

After trying several more times to open a case at the Jackson Office, Evans was finally provided intake services on July 12, 2023. *Id.* ¶ 6. While at the Jackson Office, Evans gave Bronxworks all the documents required for her case. Later that same day, she received a call from an employee, Ms. Reid, to conduct and complete her intake. *Id.* ¶ 7. At the end of the intake, Reid informed Evans that after Bronxworks assigned Evans a case manager, that case manager would follow up with Evans to schedule an appointment. *Id.* On July 14, 2023, Evans was notified that she had been given an appointment with Wanna Lei for August 7, 2023. *Id.* ¶ 8; *see* Opp. Exhibit A-1 (appointment confirmation). Evans was ignored when she asked why

2

another intake appointment was required, and when she again expressed the severity of her situation. Compl. ¶ 8; Opp. Exhibit A-2.

Evans eventually met with Lei during the scheduled appointment time in early August. Compl. ¶ 9. During that meeting, Evans expressed her concerns about her landlord, showed Lei proof of his "harassment and illegal practices," asked for legal resources, and stated her discomfort with any contact with her landlord because of her prior encounters with him. *Id.* ¶¶ 9–10. Following the appointment, Lei reached out to Evans' landlord to request that Evans be allowed to break her lease. *Id.* ¶ 10. The landlord stated that he would only do so if Evans paid a "re-rental" fee, which Lei thought was "weird." *Id.* No legal resources were provided to Evans. *Id.*

Bronxworks submitted documentation for a Good Cause Transfer ("GTC") on September 7, 2023. Opp. ¶ 31. Plaintiff alleges that a few days later, on September 10, 2023, she entered into a contract with Bronxworks that outlined her responsibilities and the services Bronxworks was to provide. Opp. ¶¶ 26–27; Exhibit C. That included that Bronxworks would advocate for Plaintiff with landlords and other agencies to assist in her search for safe housing. Evans' GTC application was approved on September 12, 2023. *Id.* ¶ 32. On September 15, 2023, Lei gave Evans a CityFHEPS (the City Fighting Homelessness and Eviction Prevention Supplement rental assistance program) shopping letter to help Evans find an apartment. *Id.* ¶ 11; *see* Dkt. No. 24-2 ¶ 10 (Declaration of Christopher Beltre). (CityFHEPS is a "rental assistance program that helps individuals and families find and keep housing.") Then, on October 4, 2023, Lei informed Evans that her case would be closed until Evans found an apartment; once Evans found an apartment, she would have to return to Bronxworks to open a new case to continue the process. Compl. ¶ 11; Opp. Exhibit D.

On February 22, 2024, Evans attempted to inform Lei that she had found a new apartment and was therefore prepared to open a new case with Bronxworks. *Id.* ¶ 12. Lei did not respond. *Id.* Evans then tried to reopen a case in person at the Jackson Office, but upon arrival, she was again turned away because of the office's ten-person daily quota. *Id.* After her rejection, Evans called Lei and asked for a landlord packet, which Evans needed to begin the apartment approval process; Lei emailed her the packet shortly thereafter. *Id.* Ultimately, Evans was unable to open a new case with Bronxworks until March 13. *Id.* During the time between February 22 and March 13, 2024, Plaintiff was rejected from leasing three apartments for which she was accepted because she was not able to access Homebase services. Opp. ¶¶ 40–41. Once the new case was opened, Evans' emergency transfer was held up for over a month because Bronxworks staff claimed that she needed a pre-clearance. Compl. ¶ 14. That information contradicted the advice Evans received from her domestic violence liaison, in line with the written procedures of the Department of Social Services ("DSS"), that a pre-clearance is not required to obtain an apartment in Westchester County. *Id.* ¶ 14.

Evans was assigned a case manager, Camesha Wright, and met with her on April 11, 2024. *Id.* ¶ 15. During that meeting, Evans signed a lease for a new apartment. *Id*. Evans and her new property manager then struggled to get into contact with Wright on several occasions. *Id.* Evans' landlord and someone Plaintiff identifies as her "abuser" both continued to harass Evans, so, on May 2, 2024, she submitted a complaint to DSS through 311 about how Bronxworks was mishandling her case. *Id.* Following further contact from her abuser, Evans pleaded with Bronxworks to escalate her case, so that she could finally move to her new apartment, but her efforts were not successful. *Id.* ¶ 16. On May 10, 2024, Evans reported her abuser's activity to the police, in part because she had previously been granted an order of

4

protection against her abuser.  *Id.*  Evans also quit her job out of fear of running into her abuser. *Id.*

Christopher Beltre, a Bronxworks case manager, conducted the apartment inspection for the apartment Evans was to move into on May 13, 2024.  Opp. ¶ 89.  He approved the apartment inspection, but in doing so failed to mention several conditions that should have prevented approval. Compl. ¶ 17; Opp. ¶ 89–90.  By contrast, Beltre inspected other apartments after inspecting that of Evans, and was thorough in those subsequent inspections, failing them for violations that were also present in Evans' apartment.  Compl. ¶ 17; Opp. ¶ 97.  The City Human Resources Administration ("HRA") approved Evans' apartment based only on the inspection carried out by Bronxworks.  Opp. ¶ 65.

Evans continued to attempt to contact Camesha and Camesha's supervisor about her case. *Id.* ¶ 18.  On June 6, 2024, when she continued to receive no response, she filed another complaint about Bronxworks with DSS.  *Id.* ¶ 18.  On June 7, 2024, Evans' case was escalated, and she was approved to move into her new apartment on June 10, 2024.  *Id.* ¶ 19.  Since moving to her new apartment, Evans has been subjected to unsafe and unlivable conditions, including flooding, which caused damage to her personal property.  *Id.*; *see* Opp. Exhibits R, J, K, L, M, N, O.  Plaintiff alleges that after moving into the apartment, she began suffering from serious health impacts including difficulties speaking and short-term memory loss.  Opp. ¶¶ 70–73.  She has therefore started to look for another apartment.  *Id.* ¶ 78.

## PROCEDURAL HISTORY

This case was initiated by summons and complaint filed in New York State Supreme Court, Bronx County, on September 6, 2024.  Dkt. No. 1 at ECF pp. 4–8.  Defendant removed this case on October 3, 2024.  Dkt. No. 1.  By memorandum and order of January 3, 2025, the Court denied Plaintiff's motion to remand this case to state court.  Dkt. No. 18.

On May 12, 2025, Defendant filed this motion for judgment on the pleadings supported by the declaration of David S. Rutherford.  Dkt. Nos. 23–24.  Plaintiff filed a rebuttal to the motion for judgment on August 29, 2025.  Dkt. No. 32.[1]  On September 18, 2025, Defendant filed a reply memorandum of law in further support of its motion for judgment on the pleadings. Dkt. No. 33.

## LEGAL STANDARD

Judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is appropriate if "the movant establishes that no material issue of fact remains to be resolved," such that a judgment on the merits of a case can be made "merely by considering the contents of the pleadings."  *Guzman v. Astrue*, 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (citing *Juster Assocs. v. City of Rutland*, 901 F.2d 366, 369 (2d Cir. 1990)).  When deciding a motion for judgment on the pleadings, a court may only analyze the content of the pleadings.  *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  The pleadings are deemed to include any document attached as an exhibit or any document that the complaint incorporates by reference.  *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir. 1985).  In light of Plaintiff's pro se status, the Court will also consider the facts and arguments raised in her brief in opposition to the motion for judgment on the pleadings.  *See Green-Faulkner v. Lowerre*, 2024 WL 1769316, at *4 (E.D.N.Y. Apr. 24, 2024).

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings."  *Bank of New York v. First Millenium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  "Thus, the Court must 'accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor.'"

---

[1] The Court granted Evans two extensions of time to file her opposition to the motion for judgment on the pleadings.  Dkt. Nos. 29, 31.

*Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 585 (S.D.N.Y. 2020) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  "That being said, the Court need not accept allegations that are 'contradicted by other matters asserted or relied upon or incorporated by reference by plaintiff in drafting the complaint.'"  *Samuels v. Barnard College*, 2024 WL 5718124, at *5 (S.D.N.Y. Oct. 3, 2024) (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).  A 12(c) motion for judgment on the pleadings must be granted unless the Complaint includes enough "factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" will not succeed against a 12(c) motion, nor will a pleading that is only supported by "mere conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 555).  For a plaintiff's claim to be plausible, it must "raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Plaintiff here is self-represented.  The Court construes pro se pleadings broadly and liberally, interpreting them to raise the strongest arguments they suggest.  *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).  That solicitude does not relieve pro se plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure.  *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007) ("[P]ro se status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure").

**DISCUSSION**

In her complaint, Plaintiff alleges several different causes of action against Bronxworks. They include that (1) "the defendant has breached the contract between the parties," (2) the defendant "discriminated against and retaliated against the plaintiff," and (3) that the defendant violated various provisions of the Violence Against Women Act ("VAWA"), 34 U.S.C. § 12471 *et seq.* This Court's jurisdiction is predicated on Plaintiff's claims under federal law. 28 U.S.C. § 1331. *See* Dkt. No. 18 at 3–4 (declining to remand the case to state court on the basis that there is federal jurisdiction due to Plaintiff's allegations under the VAWA).

**I.      The Violence Against Women Act**

In support of her claims under the VAWA, Plaintiff cites to 34 U.S.C. § 12474(d)(1)(A)–(C), 34 U.S.C. § 12475(c)(2)(A)–(C), 34 U.S.C. § 12494, and 34 U.S.C. § 12491(b)(1), (d)(2)(C), and (f). "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). None of the VAWA provisions provide Plaintiff such a cause of action. *Zitek v. Pinnacle Nursing and Rehab Ctr.*, 2024 WL 243436, at *5 (S.D.N.Y. Jan. 23, 2024).

**A.      Provisions of VAWA**

Addressing 34 U.S.C. § 12474 first, this section speaks to grants from the Secretary of Health and Human Services to "entities" that develop options for "adult and youth victims of domestic violence, dating violence, sexual assault, and stalking who are currently homeless or at risk of becoming homeless." *Id.* 12474(a)(1). The statute defines those eligible to receive federal funds as including "a domestic violence victim service provider," "a homeless service provider," "a nonprofit," "housing agencies," or a "local government or government agency." *Id.* § 12474(b). The subsections of the statute cited by Plaintiff lay out how federal funds "awarded to eligible entities under subsection (a) shall be used," clarifying that they "shall

8

develop sustainable long-term living solutions in the community by (A) coordinating efforts and resources among the various groups and organizations comprised in the entity to access existing private and public funding; (B) assisting with the placement of individuals and families in long-term housing; and (C) providing services to help individuals or families find and maintain long-term housing including financial assistance and support services." *Id.* § 12474(d)(1)(A)– (C). Plaintiff does not allege that Bronxworks is an entity that receives funding under this provision, such that these provisions are applicable. Even assuming, however, that Bronxworks does receive such federal funding, the statute does not contain a private right of action that would permit Evans to sue Bronxworks. *See Ndimbie v. Southwest Hammocks, LLLP*, 2025 WL 2324361, at *2 (S.D. Fla. July 24, 2025) (holding that "there is no private right of action to enforce VAWA's provisions" and citing cases).[2]

Plaintiff's claims under 34 U.S.C. § 12475(c)(2)(A)–(C) fail for the same reason. That subsection clarifies that "[t]o receive assistance under this section, an eligible grantee shall certify that (A) its policies and practices do not prohibit or limit a resident's right to summon police or other emergency assistance . . . (B) programs and services are developed that give a preference in admission to adult and youth victim of such violence . . . (C) it does not discriminate against any person (i) because that person is perceived to be, or has a family or household member who is or is perceived to be, a victim of such violence; or (ii) because of the actions or threatened actions of the individual who the victim . . . states has committed or threatened to commit acts of such violence against the victim." *Id.* Plaintiff has not alleged that

---

[2] As explained in *Ndimbie*, "[t]he most recent reauthorization of VAWA does create a private right of action for individuals whose intimate visual images are disclosed without their consent, allowing a victim to recover damages and legal fees. *See* 15 U.S.C. § 6851(b)(1)(A)." 2025 WL 2324361, at *2 n.1. That provision is clearly not implicated here.

Bronxworks is an eligible grantee, or that it has not or could not make a certification in line with the requirements in the statute. More importantly, there is no private right of action provided in the statute to enforce those provisions. *See Sanders v. Detroit Housing Comm.*, 2022 WL 17825044, at *5 (E.D. Mich. Sept. 29, 2022) ("there is no indication that Congress intended to create a privately enforceable right" under Section 12475).

VAWA also contains a provision prohibiting any "public housing agency or owner or manager of housing assisted under a covered housing program" from discriminating "against any person because that person has opposed any act or practice made unlawful by this part." 34 U.S.C. § 12494(a). Evans has not alleged that Bronxworks is a covered housing program. That subsection clarifies too that it is incumbent on "[t]he Secretary of Urban Development and the Attorney General" to "implement and enforce this subpart consistent with, and in a manner that provides, the rights and remedies provided for in title VIII of the Civil Rights Act of 1968." *Id.* § 12494(c). The section is enforceable only in an action brought by the Attorney General, and there is no private right of action available to Evans under that subsection. *See Ndimbie*, 2025 WL 2324361, at *3.

Finally, 34 U.S.C. § 12491(b)(1) states that "[a]n applicant for or tenant of housing assisted under a covered housing program may not be denied admission to, denied assistance under, terminated from participation in, or evicted from housing on the basis that the applicant or tenant has been a victim of domestic violence . . . if the applicant or tenant otherwise qualifies for admission, assistance, participation, or occupancy." Subsection (d)(2)(C) of the same section clarifies that "[e]ach public housing agency . . . under a covered housing program" shall provide "a notice of the rights of individuals under this section" "within any notification of eviction or notification of termination of assistance." *Id.* § 12491(d)(2)(C). Subsection (f) then tasks the

10

Secretary of Housing and Urban Development to "establish policies and procedures under which a victim requesting an emergency transfer . . . may receive" assistance. *Id.* § 12491(f). Evans has not alleged that Bronxworks is a covered housing program. But even assuming that it is, the subsection still provides no private right of action. The statute "contemplates that agencies will police VAWA's housing-related requirements by conducing compliance reviews." *Gonzalez v. 2009 Houston Scott St. LP*, 2025 WL 552680, at *1 n.1 (S.D. Tex. Feb. 19, 2025) (citing 34 U.S.C. § 12492(a)(1)).

Although self-represented plaintiffs are generally allowed an opportunity to amend their complaint before the Court will dismiss it with prejudice, *see Long v. Griffin*, 2022 WL 875865, at *4 (S.D.N.Y. Mar. 24, 2022), that rule does not hold where not even a "liberal reading of the complaint gives any indication that a valid claim might be stated." *Id.* (quoting *Breer v. Maranville*, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012)). Even with leave to amend, Plaintiff cannot state a claim under VAWA. Her claims thereunder are accordingly dismissed with prejudice.

### B.    42 U.S.C. § 1983

Plaintiff might be understood instead to invoke the protections of VAWA through 42 U.S.C. § 1983, which provides a cause of action for any person deprived of a right "secured by the Constitution and laws" against a person acting "under color of" the state. As the Supreme Court has clarified:

> In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law. *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989). We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. *Wright v. City of Roanoke Redevelopment and Housing Auth.*, 479 U.S. 418, 430 (1987). Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id.*, at 431–432. Third, the statute

11

> must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997).  On that basis, at least one district court has determined that VAWA rights are enforceable under § 1983.  *See McIntire v. Housing Auth. Of Snohomic Cty.*, 731 F. Supp. 3d 1212, 1222–23 (W.D. Wash. 2024).  *But see Moore v. Silver*, 2025 WL 1212833, at *6 (E.D.N.C. Apr. 25, 2025) (VAWA does not create federal rights giving rise to a § 1983 action).

Addressing the three factors elaborated in *Blessing*, Plaintiff has failed to allege that the statutory provisions cited are meant to "benefit" her.  Absent any allegation that Bronxworks is a "covered housing program," the Court cannot conclude that the federal statute has created a right to which Evans is entitled.  Moreover, even assuming that Bronxworks was such a covered program, Evans has not alleged that it discriminated against her on the basis of her opposition to some practice made unlawful by VAWA, 34 U.S.C. § 12494(a), or by denying her housing or assistance on the basis that she is a victim of domestic violence, *id.* § 12491(b)(1).

For the same reasons elaborated above, Plaintiff's claims under 42 U.S.C. § 1983 are accordingly dismissed with prejudice.

## II.    Discrimination and Retaliation

Plaintiff alleges that Bronxworks discriminated against her as a domestic violence victim because it reported unsatisfactory conditions for other apartments in her same building, but did not do so for her apartment.  Opp. ¶ 101.  Construing her complaint liberally, Plaintiff alleges also that Bronxworks retaliated against her for filing a formal complaint with DSS by poorly inspecting her new apartment and thereby subjecting her to substandard living conditions once she moved to that new apartment.  Compl. ¶ 15, 17–18; Opp. ¶¶ 100–02.  In her complaint, Plaintiff does not state the basis for her discrimination and retaliation claims, but a pro se

plaintiff's complaint is not limited to "the legal claims set out in [their] pleadings," nor is Plaintiff required to enumerate each claim as a "cause of action." *Phillips v. Girdich*, 408 F.3d 124, 129–30 (2d Cir. 2005). "Accordingly, because [Plaintiff's] factual allegations suggested claims" under at least three laws, the Court will "construe her complaint as asserting claims under those laws, even if she failed" to do so specifically. *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017). Plaintiff's discrimination claims and retaliation claims against Bronxworks might be understood to be alleged under Title VI of the Civil Rights Act of 1964, the Fair Housing Act ("FHA"), or the New York State Human Rights Law.

### A.     Title VI

Title VI of the Civil Rights Act of 1964 states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The statute serves to "condition an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of the funds," *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 286 (1998), and provides an "administrative mechanism for terminating federal financial support for institutions engaged in prohibited discrimination," *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696 (1979).

"In order to recover for a violation of Title VI, a plaintiff must demonstrate that (1) the defendant received federal financial assistance, (2) the plaintiff was an intended beneficiary of the program or activity receiving the assistance, and (3) the defendant discriminated against the plaintiff on the basis of race, color, or national origin in connection with that program or activity." *Martin v. State Univ. of New York*, 704 F. Supp. 2d 202, 233 (E.D.N.Y. 2010). To prove discrimination, a plaintiff must show that "(1) the [defendant] discriminated against the

13

[p]laintif[f] on the basis of [a characteristic protected in the statute]; (2) the discrimination was intentional, and (3) the discrimination was a substantial and motivating factor for the [defendant's] actions." *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 133 (E.D.N.Y. 2010) (citing *Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001)); *see Diaz v. City Univ. of N.Y.*, 2015 WL 13746673, at *8 (S.D.N.Y. Nov. 16, 2025).  It is well established that "private individuals may sue to enforce . . . Title VI and obtain both injunctive relief and damages." *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001); *see Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003) ("It is well settled that there is an implied private right of action to enforce [Title VI's] core prohibition of discrimination in federally-financed programs.") (citations omitted).  In *Sandoval*, the Supreme Court clarified and reiterated that "Title VI itself directly reaches only intentional discrimination." *Sandoval*, 532 U.S. at 281.  A "'naked allegation' . . . cannot demonstrate a plausible entitlement to Title VI relief." *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988)).

As for retaliation under Title VI, a plaintiff must show: (1) "participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protective activity and defendants' adverse action." *McKie v. New York University*, 2000 WL 1521200, at *3 (S.D.N.Y. Oct. 13, 2000).  If the plaintiff does, "it becomes defendants' burden to offer a legitimate and non-retaliatory reason for its actions.  If defendants meet their burden, plaintiff must produce sufficient evidence for a reasonable jury to find the proffered reasons are a pretext for discriminatory retaliation." *Id.*

Plaintiff does not affirmatively allege that Bronxworks receives federal funds; instead she states that Bronxworks is an "agent of the City of New York." Opp. ¶ 22.  But receipt of state

funds is not sufficient to grant jurisdiction under Title VI.  Assuming for the purposes of the motion for judgment on the pleadings that Bronxworks does receive federal funds, Title VI still does not grant Plaintiff any relief, as she has not alleged discrimination or retaliation based on a characteristic protected by the statute.  Title VI does not cover persons alleging discrimination or retaliation on the basis of their status as a victim of domestic violence.  42 U.S.C. § 2000d (covering just "race, color, or national origin").  Where "Congress, in drafting [Title VI], expressly denominated multiple protected classes," the "unambiguous statutory text and its plain meaning control in the absence of compelling argument demonstrating that the text is ambiguous or otherwise in need of some further judicial gloss." *McVicker v. Muskogee Hous. Auth.*, 2024 WL 4416555, at *7 (E.D. Okla. Oct. 4, 2024) (analyzing the text of the FHA, which protects against discrimination on the basis of "race, color, religion, sex, familial status, and national origin"); *see Taylor v. Children's Village*, 2021 WL 1581568, at *4 (S.D.N.Y. Apr. 21, 2021) ("status as a victim of domestic violence . . . is not a protected class under Title VII," which prohibits discrimination on the basis of "race, color, religion, sex, or national origin.")  Because Plaintiff has not alleged any other cognizable basis upon which she might have been discriminated or retaliated against, she has not stated a claim under Title VI.

Plaintiff's claims under Title VI are accordingly dismissed with prejudice.

### B.    The Fair Housing Act

The FHA makes it illegal to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b).  Under the FHA, any "aggrieved person" who "claims to have been injured by a discriminatory housing practice" may bring a lawsuit.  *Id.* § 3613(a)(1)(A).  And "[u]nlike similar statutes that expressly limit liability to a few actors," "the FHA is silent on who can and

cannot be sued." *Miller v. 270 Empire Realty LLC*, 2012 WL 1933798, at *5 (E.D.N.Y. Apr. 6, 2012). "Rather, the FHA 'focuses on prohibited acts,' and simply declares that such acts 'shall be unlawful.'" *Id.* (quoting *Fair Hous. Justice Ctr., Inc. v. Broadway Crescent Realty, Inc.*, 2011 WL 856095, at *4 (S.D.N.Y. Mar. 9, 2011)). The FHA also makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section [3604.]" 42 U.S.C. § 3617.

To state a claim of intentional discrimination under the FHA, Evans is required to allege that she is "'a member of a protected class,' suffered relevant 'adverse' treatment, and '... [she must sustain] a minimal burden of showing facts suggesting an inference of discriminatory motivation.'" *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "'[A] plaintiff need only give plausible support to a minimal inference of discriminatory motivation' at the pleading stage." *Id.* at 45–46 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Thus, "a plaintiff may not need to prove that [his] protected status was a but-for cause of the adverse action [he] suffered, but only a motivating factor." *Id.* at 46 (citing, *inter alia*, *Vega*, 801 F.3d at 86); *see, e.g., Sykes v. NYC Hous. Auth.*, 2022 WL 875902, at *2 (S.D.N.Y. Mar. 24, 2022).

Status as a victim of domestic violence is not defined as a protected class under the FHA; the statute covers only discrimination on the basis of "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Several courts, however, have found that discrimination against victims of domestic violence is a form of sex discrimination, as an action motivated by

animus against victims of domestic violence could be "motivated by intent to discriminate against women." *Bouley v. Young-Sabourin*, 394 F. Supp. 2d 675, 678 (D. Vt. 2025); *see Butler v. Sundo Capital, LLC*, 559 F. Supp. 3d 452, 457 (D. Penn. 2021); *Wilson v. Guardian Mgmt., LLC*, 383 F. Supp. 3d 1105, 1108-1110 (D. Or. 2019); *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 872 (S.D. Ohio 2013); *Creason v. Singh*, 2013 WL 6185596, at *1, *4 (N.D. Cal. Nov. 26, 2013); *Meister v. Kansas City*, 2011 WL 765887, at *6 (D. Kan. Feb. 25, 2011). Other courts have held to the contrary that while, for purposes of disparate impact analysis, "status as a domestic violence victim may be an adequate proxy for sex because a policy unfairly targeting domestic violence victims will largely affect women," when proceeding on a claim of disparate treatment, a plaintiff "must still demonstrate that she was intentionally discriminated against based upon her sex." *McVicker*, 2024 WL 4416555, at *8.

Even assuming, without deciding, that status as a victim of domestic violence could qualify as a protected characteristic under the FHA, Plaintiff's pleadings would not entitle her to any relief under the statute. Evans has not plausibly alleged that her status as a victim of domestic violence was a motivating factor for the adverse action (the approval of her apartment despite its alleged deficiencies). Her allegations do not connect her status as a victim of domestic violence to the approval of the apartment—at most, she has alleged that Bronxworks was aware of her victim status; she has not alleged that Bronxworks treated her differently than others on that basis.

Evans' claims focus more on Bronxworks' alleged retaliation for her reporting of the case to DSS. Compl. ¶ 101. To establish an FHA claim for interference under Section 3617, a plaintiff must show that "(1) the plaintiff engaged in protected activity, (2) the defendant was aware of this activity, (3) the defendant took adverse action against the plaintiff, and (4) a causal

17

connection exists between the protected activity and the adverse action." *Ponce v. 480 E. 21st St., LLC*, 2013 WL 4543622, at *3 (E.D.N.Y. Aug. 28, 2013); *see also Mazzocchi Windsor v. Owners Corp.*, 2013 WL 5295089, at *12 (S.D.N.Y. Sept. 17, 2013). The filing of a complaint is not alone protected activity. Protected activity includes the "[f]iling [of] complaints . . . and even less formal means of protest such as letter writing, . . . if it is lodged in protest of statutorily prohibited discrimination." *Kendrick v. Greenburgh Hous. Auth.*, 2011 WL 1118664, at *9 (S.D.N.Y. Mar. 22, 2011).

Plaintiff has not alleged that she filed the DSS complaints in "protest" of discrimination prohibited by the FHA. Instead, Plaintiff alleges that she filed her first a complaint with DSS in May of 2024 because she was frustrated that she was unable to contact her case manager, and because her cases was not being treated with emergency priority. Compl. ¶ 15; Opp. ¶ 88. She submitted her second DSS complaint in June of 2024 not because she thought she had been discriminated against, but because she was frustrated that she was unable to contact her case manager or the case manager's supervisor. Compl. ¶ 18. Because Plaintiff has not alleged that she took any action "to protest or oppose statutorily prohibited discrimination," she cannot state a retaliation claim under the FHA. *Gurevitch v. Emerald Green Prop. Owners Ass'n*, 2025 WL 642347, at *10 (S.D.N.Y. Feb. 27, 2025).

Because Plaintiff's complaint gives no indication that a valid claim might be stated, Plaintiff's claims under the FHA are dismissed with prejudice.

### C.    New York State Human Rights Law

The New York State Human Rights Law ("NYSHRL") makes it an "unlawful discriminatory practice" for the "owner, sub-lessee, assignee, or managing agent of publicly-assisted housing accommodations" to "discriminate against any person because of his or her . . . status as a victim of domestic violence . . . in the terms, conditions or privileges of any publicly-

assisted accommodations or in the furnishing of facilities or services in connection therewith."

N.Y. Exec. L. § 296(2-a)(b).  Section 296(7) of the NYSHRL further makes it unlawful for "any

person engaged in any activity to which this section applies to retaliate or discriminate against

any person because he or she has opposed any practices forbidden under this article or because

he or she has filed a complaint, testified or assisted in any proceeding under this article."  N.Y.

Exec. L. § 296(7).  "The elements of a claim under the NYHRL are the same as under the Fair

Housing Act."  *Echeverria v. Krystie Manor, LP*, 2009 WL 857629, at *8 (E.D.N.Y. Mar. 30,

2009); *see Broome v. Biondi*, 17 F. Supp. 2d 211, 218–219 (S.D.N.Y.1997) (listing elements of a

prima facie case of retaliation under the FHA and NYHRL).

Although Evans is clearly within a protected class as defined by the NYSHRL, she has

not alleged that Bronxworks is the owner, sub-lessee, or managing agent of her new apartment.

Even assuming that to be the case, as with her claims under the FHA, Evans has failed to

plausibly allege that she was discriminated against on the basis of her status as a victim of

domestic violence.  She has alleged only that she was a victim of domestic violence, and that

Defendant was aware of that fact; that is not enough to "permit an inference of discriminatory

motive."  *Miller v. Levi & Korsinsky, LLP*, 695 F. Supp. 3d 397, 407 (S.D.N.Y. 2025) (quoting

*Risco v. McHugh*, 868 F. Supp. 2d 75, 98–99 (S.D.N.Y. 2012)).  To successfully state a

discrimination claim under the NYSHRL, Plaintiff would have to plead facts that she was

"treated less well" or differently than another because of her protected status.  *Id*; *see Sutter v.

Dibello*, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021) (a plaintiff may also "raise an

inference of discrimination by demonstrating the disparate treatment of at least one similarly

situated [person] outside [her] protected group and sufficient facts from which it may reasonably

19

be inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'") (quoting *Hu v. City of New York*, 927 F.3d 81, 96–97 (2d Cir. 2019)).

Plaintiff's allegations indicate to the contrary that she was treated the same as others in the process of seeking a new apartment. She alleges that her case was often delayed due to an entity-wide policy that Bronxworks would service no more than 10 people in a day. Compl. ¶ 3. Also, she alleges that although she told the office her case was an emergency, that Bronxworks stated "everyone here has an emergency." *Id.* ¶ 4. Those statements, while problematic for other reasons, do not evince intentional discrimination against Plaintiff on the basis of her status as a victim of domestic violence. Evans also alleges that although her apartment was approved with "no problem," the Bronxworks inspector failed another apartment that had violations that were also present at her apartment. Compl. ¶ 17. But she has alleged no facts demonstrating that the persons for whom those inspections were conducted were "similarly situated" to her in any relevant respect, and so does not raise an inference of intentional discrimination. *See Facci-Brahler v. Montgomery Cty.*, 2024 WL 1242119, at *3 (N.D.N.Y. Mar. 22, 2024).

Because Evans has not alleged that she was discriminated against based on her status as a victim of domestic violence, nor that she submitted a complaint on that basis, she cannot state a claim for retaliation under the NYSHRL. A retaliation claim can succeed "only if she shows that she 'opposed' discrimination," i.e. engaged in a protected activity, and was retaliated against in response. *Albunio v. City of New York*, 947 N.E.2d 135, 138 (N.Y. 2011); *see Leroy v. Delta Air Lines*, 2022 WL 12144507, at *3 (2d Cir. 2022) (summary order). Because she has not alleged that she engaged in a protected activity, she cannot show that the "defendant engaged in conduct that was reasonably likely to deter a person from engaging in the protected activity." *Rubin v.*

20

*New York City Bd. of Educ.*, 2023 WL 1972729, at *19 (S.D.N.Y. Jan. 6, 2023) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).

As above, Plaintiff's claims under the NYSHRL are dismissed with prejudice.

### III.    Breach of Contract

Plaintiff also pleads a cause of action for breach of contract, stating that her contract with Bronxworks outlined the responsibilities of each party. Opp. ¶ 27. Specifically, she alleges that the contract stated that the case was to stay open for 270 days. *Id.* ¶ 28. It stated also that Bronxworks would submit the documentation for a Good Cause Transfer, and that it would advocate on Evans' behalf with landlords and other agencies to assist in her search for safe housing. *Id.* ¶ 30. To support her breach of contract claim, Evans attached to her opposition the "contract" at issue. Opp. Exhibit C. That document is an "Independent Living Plan for Adults/Families" provided by the New York Department of Homeless Services. *Id.* It states that the Evans is the "client," and outlines the various events (including start date and completion date) that occurred in connection with her application for housing. *Id.*[3]

The elements of a breach of contract action in New York are well-established. They are "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (citation omitted). Evans does not establish the existence of an enforceable agreement, which requires "establish[ing] an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound[.]" *Zhu Jun v. Bank of Am., N.A.*, 2024 WL 5135381, at *7 (2d Cir. 2024) (quoting *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 46 (1st Dep't 2009)). Consideration consists of "some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss,

---

[3] The Independent Living Plan contains a notice that the Client has the right to "an agency conference or fair hearing" to challenge any perceived violations of the Plan. Opp. Exhibit C.

or responsibility given, suffered, or undertaken by the other." *Joao v. Cenuco, Inc.*, 376 F. Supp. 2d 380, 384 n.4 (S.D.N.Y.2005) (citing *Anonymous v. Anonymous*, 784 N.Y.S.2d 918 (Sup. Ct. N.Y. Cnty. 2004)).  Put differently, "[t]o constitute consideration, a performance or a return promise must be bargained for."  Restatement (Second) of Contracts § 71 (1981).

Plaintiff does not allege that she bargained for the provision of services outlined in the Independent Living Plan.  That Plan merely outlines the conditions of participation in a program run by the state government; it does not create reciprocal obligations on behalf of each party. Although it contemplates that Plaintiff will be required to pay a portion of monthly rent, the Plan is not itself the rental agreement—nor has Plaintiff alleged that rent is ever paid to Bronxworks itself.  *See* Opp. Exhibit C (indicating that the city entity pays a "portion" of monthly rent to a landlord).  A document laying out the general conditions under which Plaintiff can receive rental assistance from the New York Department of Homeless Service is thus not an enforceable contract due to the lack of consideration.

Plaintiff might also be understood to allege a promissory estoppel claim.  Under New York law, "[a] plaintiff must satisfy four elements to succeed on a claim of promissory estoppel: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced" as well as "facts sufficient to satisfy an extraordinary circumstances requirement."  *Kunkel v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001).  The promise must be "clear and unambiguous."  *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976 (S.D.N.Y. 1989) (quoting *R.S. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 78 (2d Cir. 1984)).  "'A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel.'"  *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 342 (S.D.N.Y. 2023) (quoting *Kilgore v. Ocwen Loan*

22

*Serv., LLC*, 89 F. Supp. 3d 526, 534 (E.D.N.Y. 2015)).  Furthermore, a claim under promissory estoppel "turns not on the nature of the benefit received by the defendant but upon the clarity and definitiveness of its promise and change in the plaintiff's position as a result of that promise." *Id.*  "Under New York law, promissory estoppel allows a party, in the absence of an enforceable contract, to recover compensatory damages for its detrimental reliance on the promise of another."  *TSNY Mgmt. L.L.C. v. Partnership 93 L.P.*, 2010 WL 11627255, at *22 (E.D.N.Y. Nov. 1, 2010).

Evans cannot state a claim for promissory estoppel.  She alleges that Bronxworks promised to keep her case open for 270 days but did not, and that they closed her case early without fulfilling all obligations.  Opp. ¶¶ 79–82.  The first of her arguments is faulty based on the Independent Living Plan itself, as it states that her case "can only remain open for up to 270 days," but nowhere indicates that it would be or had to be open for that entire period.  Opp. Exhibit C.  As to her second argument, Plaintiff has not alleged any reliance on the "obligations" in the Plan that resulted in a change in her position.  The Plan contemplates that Homebase would assist Evans in submitting a Good Cause Transfer Application and assist in issuing a shopping letter—both of which it did.  Although Evans continues to experience difficulties with her present landlord, Homebase's "plans" to "provide advocacy with landlords and other agencies" lasted only during the pendency of the case, which was closed on October 4, 2023.  Opp. Exhibit D.  Plaintiff also does not connect Bronxworks' alleged failures to follow the Independent Living Plan with her stated claims for relief—her current issues with her apartment stem not from the Plan that opened on August 9, 2023 and closed on October 4, 2023 (after she was issued a CityFHEPS shopping letter) and any alleged promise thereunder, but from inadequacies with the apartment she was eventually provided in 2024.

23

Plaintiff's claim for breach of contract is dismissed with prejudice.

**CONCLUSION**

The motion for judgment on the pleadings is GRANTED.

"[A] district 'court should not dismiss [a complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991)).  Here, giving Plaintiff's complaint the requisite liberal reading, there is no indication that a valid claim could be stated.  Plaintiff has no recourse against Defendant under VAWA, the statute upon which she relies, because that statute does not allow a private right of action.  She also has no recourse under Title VI because there is no indication from her pleading that she was the victim of discrimination based on a characteristic protected by that statute.  Nor has she evidenced an actionable contract between herself and Bronxworks that would give rise to her requested damages.

Plaintiff was the victim of an unfortunate set of circumstances and delays, but according to her complaint those delays arose because of Bronxworks' challenges dealing with a volume of cases.  The thrust of Plaintiff's complaint is not that she was discriminated against based on her status as a victim of domestic violence, or that she was retaliated against by Bronxworks on that basis.  It is that Bronxworks failed as a matter of course to timely address her emergency requests because in the undifferentiated and perhaps callous words of the staff member, "everyone here has an emergency."  Compl. ¶ 4.  On the basis of those pleadings, she has not claimed and cannot claim to be a victim of discrimination because of her status as a domestic violence victim.  Nor has she pled any contract between the parties—the attached Independent Living Plan refutes a contractual cause of action considering the lack of consideration and lack of any enforceable promise.  Therefore, the Complaint is dismissed with prejudice.  *See Johnson*

24

*v. MTA-New York City Transit*, 2020 WL 6530915, at \*11 (S.D.N.Y. Feb. 6, 2020) (dismissing a pro se complaint with prejudice where "the problem with plaintiff's causes of action is substantive such that better pleading will not cure it"); *Joseph v. JRF Income Tax Bus. Servs.*, 2021 WL 3516421, at \*6 (E.D.N.Y. Aug. 10, 2021) (denying leave to amend where the claims are "fundamentally invalid"); *Cuoco v. Moritsugu*, 222 F.3de 99, 112 (2d Cir. 2000) ("a futile request to replead should be denied"); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (where leave to amend "is unlikely to be productive," "it is not an abuse of discretion to deny leave to amend").

The Clerk of Court is respectfully directed to close Dkt. No. 23 and to close this case.

SO ORDERED.

Dated: December 3, 2025
     New York, New York

_____
LEWIS J. LIMAN
United States District Judge

25